IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MEREDITH KORNFELD, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. CIV-07-438-L |
| ) | |
| JULIAN KORNFELD, individually ) | |
| and as co-trustee of Julian P. ) | |
| Kornfeld Revocable Trust, et al., ) | |
| ) | |
| Defendants. ) | |

# **O R D E R**

This matter arises out of a settlement agreement entered into by the parties[1] on September 20, 2004. Plaintiffs Meredith and Nancy Kornfeld are the daughters of defendant Julian Kornfeld. At the time of the settlement agreement, defendant Patsy D. Permenter had been Julian's[2] administrative assistant for over 35 years. Exhibit 3 to Plaintiffs' Motion for Partial Summary Judgment at ¶ 2.1 ("Agreement"). On April 16, 2007, plaintiffs filed this action seeking damages for breach of contract and a declaration that reformation of § 3.3.2 of the Agreement was not warranted. Defendants counterclaimed for reformation of § 3.3.2. On October 30, 2007,

---

[1]In addition to the parties named in this action, the settlement agreement was also executed by defendant Julian P. Kornfeld in his capacity as president of Mernan Royalty Corporation and by Jeannie K. Mitschke, Julian's wife. Exhibit 3 to Plaintiffs' Motion for Partial Summary Judgment at 24, 27.

[2]As Meredith, Nancy, and Julian Kornfeld all have the same surname, the court will refer to them by their first names.

plaintiffs filed an amended complaint seeking only declaratory judgment and omitting any claim for breach of contract.

This matter is before the court on cross motions for summary judgment. Summary judgment is appropriate if the pleadings, affidavits, and discovery "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party must "set out *specific* facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2) (emphasis added). *See also*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The undisputed facts establish that in 1973, Julian formed a corporation that eventually became Mernan Royalty Corporation ("MRC"); the assets of the corporation consisted of oil and gas royalties, overriding royalty interests, and other interests. Agreement at ¶ 2.4.  Prior to April 1, 1987, Julian owned 100 percent of the stock of MRC; on that date, Julian transferred the stock to Meredith and Nancy. Julian did not, however, deliver any stock certificates to his daughters; rather, he held the MRC stock certificates in their names.  Id.  In exchange, Meredith and Nancy agreed to provide Julian with a private annuity, the payments of which were to begin on April 1, 2015.  Id.  On February 1, 1999, Julian signed an Agreement of Merger, which gave the Estate of Alfred D. Goldman and the Alfred D. Goldman SNR-1 Trust ("the Goldman entities), 31.12 and 12.70 percent of MRC's stock respectively.[3]  Id.  Julian was the executor of the Estate of Alfred D. Goldman and the sole trustee of the Alfred D. Goldman SNR-1 Trust.  Id.  After the Agreement of Merger was signed, MRC stock was held as follows:

---

[3]Defendants filed a motion in limine seeking to exclude "any mention of the Goldman Entities' merger". Defendants' Motion in Limine at 4. Defendants contend such information should be excluded as irrelevant or more prejudicial than probative. As it was, in part, the unwinding of the Goldman entities merger that led to the Agreement, the court finds such evidence is clearly relevant. The court, however, agrees that it need not determine whether Julian in fact signed Meredith's and Nancy's names to the merger agreement without their consent.  The fact of the merger agreement and the parties agreement to cancel it is all that the court considered.

| Shareholder | Voting Common | Non-Voting Preferred |
| --- | --- | --- |
| Meredith Kornfeld | 21.75% | 50% |
| Nancy Kornfeld | 21.75% | 50% |
| Estate of Alfred D. Goldman | 31.12% | 0 |
| Alfred D. Goldman SNR-1Trust | 12.70% | 0 |
| MRC ESOP[4] | 12.67% | 0 |

Id.

On June 17, 2004, Julian filed a complaint in this court seeking repudiation of the private annuity and various joint purchase agreements entered into by Julian, Meredith, Nancy, and Ms. Permenter.[5] Agreement at ¶ 2.6. Meredith and Nancy, individually and on behalf of MRC, counter-sued Julian and Ms. Permenter for breach of contract, breach of fiduciary duties, conversion, conspiracy, negligence and gross negligence. Agreement at ¶ 2.7. The settlement agreement that is at the heart of the current lawsuit represents the parties' settlement of the 2004 action.

The parties exchanged multiple drafts of the written agreement, which was signed on September 20, 2004. Section 3.2.1 of the Agreement provides:

---

[4] Defendants contend that on July 6, 1990, MRC created an Employee Stock Ownership Plan ("ESOP"), effective as of January 1, 1990. Amended Counterclaim at ¶ 4 (Doc. No. 10); Defendants' Motion for Summary Judgment at 2, ¶ 4 (Doc. No. 38); Affidavit of Julian P. Kornfeld at ¶ 8. Plaintiffs did not admit the ESOP assertions presented in defendants' counterclaim or their motion for summary judgment. Rather, plaintiff stated they "have no knowledge or information sufficient to admit or deny the allegations of Paragraphs 4, 5, 6, 7, 8, and 9, but . . . would add that from 1987 to September 20, 2004, Defendant Julian, in his capacity as President, managed MRC and was responsible for maintaining the corporate books and records, including the stock record book." Plaintiffs' Response and Objection to Defendants' Motion for Summary Judgment at 2, ¶ 3 (Doc. No. 43). Defendants submitted no formal plan documents that evidence the existence of the MRC ESOP.

[5] Kornfeld v. Kornfeld, Case No. CIV-04-746-L (W.D. Okla. filed June 17, 2004) [hereinafter cited as "2004 action"].

4

> Julian, Meredith and Nan shall acknowledge and agree that as of the date of Closing, the Private Annuity shall be terminated, cancelled, and rescinded and shall be considered null and void and nether Julian, Meredith or Nan shall have any right or obligation thereunder, *the parties intent being that Meredith and Nan are to own 100% of the stock of MRC* without any further obligation to Julian.

Agreement at ¶ 3.2.1 (emphasis added).  The Agreement further provides that:

> On or before the date of Closing, Julian shall evidence the repayment to MRC of the promissory notes dated July and August, 2001, for $225,000.
>
> On or before the date of Closing, MRC shall evidence the payment to Julian, as executor and trustee of the Goldman Entities, the $225,000 in redemption and cancellation of all shares of stock of MRC held by the Goldman Entities, restoring Meredith and Nan as the rightful owners of the stock of MRC, as follows.
>
> | Stockholder | Voting Common | Non-Voting Preferred |
> |---|---|---|
> | Meredith | 43.66% | 50% |
> | Nan | 43.66% | 50% |
> | MRC ESOP | 12.67% | 0 |

Agreement at 3.3.1-3.3.2.  Pursuant to the terms of the Agreement, MRC was to deliver plaintiffs' stock certificates to them on the date of Closing.  Id. at ¶ 3.3.4.

In 2006, Meredith and Nancy entered into an agreement to sell the outstanding stock of MRC to Buffalo Creek Minerals, LLC and Sandstone Energy Acquisitions Corp. ("Buyers") effective September 11, 2006.  On September 18, 2006, counsel for Meredith and Nancy transmitted a letter to Julian notifying him of the purchase and sale agreement.  Exhibit 4 to Plaintiffs' Motion for Partial Summary

Judgment. Julian acknowledged receipt of the letter on September 21, 2006. Id. Thereafter, Julian contended that – contrary to the percentages reflected in the Agreement – "the ESOP does own 22.55% of the issued and outstanding stock of MRC." Exhibit 5 to Plaintiffs' Motion for Partial Summary Judgment at 1. He continued:

> We call your attention to the breakdown of percentages of voting common stock set forth on page 1 of your letter which was accurate prior to the redemption of all shares owned by the Estate of Alfred D. Goldman and the Alfred D. Goldman SNR-1 Trust. Please keep in mind that the girls did not purchase the shares of stock owned by the Estate of Alfred D. Goldman and the Alfred D. Goldman SNR-1 Trust, but the corporation redeemed such shares, thus reducing the number of issued and outstanding shares of stock. It appears that what you did in your calculations was to take the sum of 31.12% and 12.70% which is 43.82%, divided it by two, which calculates to 21.91%, and added that amount to the 21.75% owned by each of Meredith and Nan to reach the figure of 43.66% as shown on page 2 of your letter. However, since this was a redemption and not a purchase by Meredith and Nan, the proper way to calculate the percentages of common stock owned by each of them and the MRC ESOP would be to add 21.75% plus 21.75% plus 12.67% equals 56.17%. Then each shareholder's voting percentage to the total of 56.17% should be calculated, leaving Meredith and Nan with a percentage of 38.72% [21.75% ÷ 56.17% = 38.72%]. Similarly, the ESOP shares of the then issued and outstanding shares of stock would be 22.55% [12.67% ÷ 56.17% = 22.55%].

Id. at 1-2. In addition, Julian argued he and Ms. Permenter owned the majority of the ESOP shares (49.75% for Julian and 11.21% for Ms. Permenter). Id. at 2. Counsel for plaintiffs countered that the Agreement "recites the percentages of stock

owned by the stockholders, on the date of the Closing, after redemption of the shares of stock of MRC.  There is nothing in the Settlement Agreement that suggests that the MRC ESOP owns 22.55% of the stock, or that you own 61% (sic) and Pat owns 11.21% of the ESOP shares." Id. at 3.  Due to the dispute over the percentage of shares owned by MRC ESOP, the Buyers agreed to deposit into an escrow account the sum of $109,998.00, which represents 60.959407% of the purchase price attributable to 22.5555% of the MRC stock.  Exhibit 1 to Plaintiffs' Motion for Partial Summary Judgment at ¶ 27; Exhibit 26 to Affidavit of Julian P. Kornfeld at 7; Joint Stipulation at ¶ 13.

Plaintiffs seek to enforce the terms of the Agreement as written, while defendants contend § 3.3.2 must be reformed due to a mutual mistake or a unilateral mistake coupled with fraud or inequitable conduct.

> Title 15 O.S. 1991 § 156 provides that a written agreement may be reformed when through "fraud, mistake, or accident" the agreement does not express the real intentions of the parties.  Even if the contract is free from ambiguity, reformation may be proper if it is shown there existed fraud or mutual mistake.
>
> "Reformation of a written instrument will be decreed when the words that it contains do not correctly express the meaning that the parties agreed upon, as the court finds to be convincingly proved."  Reformation is a remedy to make a written contract conform to the antecedent expressions on which the parties based their agreement, and insofar as the written document differs from these antecedent agreements, it will be reformed.  To obtain reformation, [defendants] must show an (1) instrument representing an antecedent agreement which should be

> reformed, (2) mutual mistake or mistake by one party and inequitable conduct on the part of the other, which results in an instrument that does not reflect what either party intended, and (3) proof of these elements by clear and convincing evidence. In the absence of mutual mistake or unilateral mistake plus inequitable conduct, the equitable remedy of reformation will not stand.

Thompson v. Estate of Coffield, 894 P.2d 1065, 1067-68 (Okla. 1995) (citations and footnote omitted).

The court finds defendants have not met their burden of proving the existence of a mutual mistake. A mutual mistake requires that all parties labor under the same misconception. Hoobler v. Hanson, 925 P.2d 13, 14 n.1 (Okla. 1996). In this case, defendants assert the Agreement incorrectly reflects the percentage of stock owned by MRC ESOP. Defendants, however, have presented no evidence that the parties agreed to anything other than that MRC ESOP would own 12.67 percent of the MRC stock after the Agreement of Merger with the Goldman entities was unwound. Defendants' contention that the precise percentage reflected in *all* versions of the Agreement was a scrivener's error has no support in the record, much less clear and convincing support. From May 28, 2004 to September 20, 2004, the parties exchanged multiple drafts of the Agreement. *See* Exhibits 6-8 to Plaintiffs' Motion for Partial Summary Judgment. That Julian closely reviewed the drafts is evidenced by his numerous proposed changes to the Agreement. *See* Exhibits 24-25 to Affidavit of Julian P. Kornfeld. In fact, Julian actually changed portions of § 3.3 without proposing any modification of the percentages reflected in § 3.3.2. See

Exhibit 24 to Affidavit of Julian P. Kornfeld at 4-5.  The sheer number of changes proposed by Julian counters defendants' assertion that § 3.3.2 does not reflect the parties' agreement.  Surely, given Julian's minute examination of the draft agreement, he would have changed the stock percentages if he perceived them to be in error.  The fact that he did not do so belies defendants' assertion that the percentages reflected in § 3.3.2 constitute a mistake.  Likewise, Julian's assertion that "by simple arithmetic, Meredith Kornfeld and Nancy Kornfeld had knowledge of the percent of voting common stock owned by the MRC ESOP"[6] is insufficient. Julian is not competent to testify as to what Meredith and Nancy knew, especially since that "knowledge" could only be acquired, if at all, by performing mathematical computations and is at odds with the parties' express agreement.  *See* Sabine Corp. v. ONG Western, Inc., 725 F. Supp. 1157, 1188 (W.D. Okla. 1989).

At best, defendants may have established a unilateral mistake on Julian's part. Julian was in control of the books and records of MRC; as plaintiffs did not receive any stock certificates until the date of closing, they had no opportunity to compare the stock certificates with the percentages reflected in the Agreement.  "One party's mistake [however] is not sufficient to warrant reformation."  Thompson, 894 P.2d at 1068 n.2.  Furthermore, defendants have presented no evidence of any inequitable

---

[6]Affidavit of Julian P. Kornfeld at ¶ 24.

conduct or fraud on plaintiffs' part that would justify reformation.[7]  Simply put, defendants have not established by clear and convincing evidence that § 3.3.2 of the Agreement does not reflect what the parties intended.  The court therefore declares that – consistent with the parties' Agreement – the MRC ESOP owned 12.67% of the issued and outstanding stock of MRC.  As the price paid by the Buyers was $800,000.00,[8] the funds payable to the ESOP owners is $101,360.00.

The court cannot, however, declare the amounts due to the parties from these funds.  As noted, defendants failed to provide any formal plan documents for the MRC ESOP, so the court cannot determine how the stock was to be distributed.  Nor did defendants provide authenticated records that reflect the parties' salaries, on which defendants assert the stock distribution was based.[9]  In contrast, plaintiffs present evidence tending to suggest that they own all of the MRC ESOP shares.[10]  The court finds neither side has demonstrated entitlement to summary judgment on

---

[7]Defendants' conclusory argument that "*If* Plaintiffs knowingly placed incorrect numbers in the Settlement Agreement, Plaintiffs were committing fraud against Defendants" is simply inadequate to establish fraud.  Defendants' Surreply to Plaintiffs' Motion for Partial Summary Judgment at 7 (emphasis added).  Furthermore, there is *no* evidence that plaintiffs "knowingly placed incorrect numbers" in the Agreement.

[8]Exhibit 13 to Plaintiffs' Reply to Defendants Response to Plaintiffs' Motion for Partial Summary Judgment at ¶ 5.

[9]In support of their figures, defendants offer Exhibit 8 to the Affidavit of Julian P. Kornfeld.  There is, however, no indication when this document was prepared or by whom.  Nor did defendants offer into evidence any underlying records that would document the share allocation figures shown on this exhibit.

[10]*See* Exhibit 5 to Plaintiffs' Reply to Defendants Response to Plaintiffs' Motion for Partial Summary Judgment at 3 ("The only other shares will be owned by the ESOP, of which the two of you are the *sole* beneficiaries.") (emphasis added).

this issue. The parties' request for summary judgment on distribution of the funds is therefore denied.

As the court is unable to fully resolve the parties' dispute based on the record presented, it finds plaintiffs' request for an award of attorney's fees is premature. The court, however, notes that it has discretion to award such fees pursuant to 28 U.S.C. § 2202 regardless of whether they are recoverable under state law. *See* Gant v. Grand Lodge of Texas, 12 F.3d 998, 1002-3 (10th Cir. 1993), *cert. denied*, 511 U.S. 1083 (1994).

In sum, Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 14) is GRANTED in part and DENIED in part. Defendants' Motion for Summary Judgment (Doc. No. 38) is DENIED. Defendants' Motion in Limine (Doc. No. 35) is also DENIED. With respect to the remaining issue of distribution of the funds, the court directs the parties to supplement the record with affidavits and supporting documentation within **fifteen (15) days** of the date of this order.

It is so ordered this 31st day of March, 2008.

*/s/ Tim Leonard*
TIM LEONARD
United States District Judge